O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHUBHAM,<br><br>　　　　　　　　　Petitioner,<br>　　　　v.<br><br>WARDEN of Desert View Annex Detention et al.,<br><br>　　　　　　　　　Respondents. | Case No.: 5:26-cv-00856-MEMF-PD<br><br>**ORDER GRANTING PETITIONER'S EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER [DKT. NO. 4]** |

　　　　Before the Court is the Motion for Temporary Restraining Order filed by Petitioner Shubham. Dkt. No. 4 ("Motion"). For the reasons stated herein, the Motion is GRANTED.

/ / /

/ / /

/ / /

1

## I. Background

### A. Factual Background[1]

Petitioner Shubham is a twenty-four-year-old native and citizen of India. Dkt. No. 1 ("Petition") ¶ 1. On or around October 20, 2022, Shubham entered the United States, seeking lawful protection under U.S. immigration laws. *Id*. He was released on his own recognizance on November 1, 2022, when he was issued an I-220A Form (Order of Release on Recognizance). *Id*. ¶ 3. Upon release, he was not placed on any electronic monitoring, nor was he assigned any supervision program or given a reporting schedule. *Id*. His sole obligation was to appear for his immigration court hearings, which he has complied with. *Id*.

Following his release, Shubham filed a Form I-589 Application for Asylum, and his removal proceedings remain pending before the Sacramento Immigration Court. *Id*. ¶ 1. He holds an Employment Authorization Document, which is valid through November 24, 2030. *Id*. ¶ 2. And he has continuously resided in California, where he has maintained lawful employment, attended all court hearings, and participated with the Fresno Sikh community. *Id*. ¶ 4.

On or around January 23, 2026, Shubham was leaving his residence to go to work when he was apprehended by ICE and arrested without an opportunity to contact his attorney or explain his circumstances. *Id*. ¶ 5. He was transported to the San Bernardino ICE office and then transferred to Los Angeles, where he has been detained in custody at the Adelanto ICE Processing Center. *Id*. Shubham was never provided with a reason for his detention or told if he violated any condition of his release. *Id*. ¶ 6.

### B. Procedural History

On February 22, 2026, Shubham filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 in this matter. *See* Petition. Shubham also filed a Motion for Temporary Restraining Order on that same day. *See* Motion. On February 23, 2026, the Court ordered Respondents to file a response to the Motion by February 25, 2026, at 5 PM and ordered Shubham to file a reply by February 26,

---

[1] Unless otherwise indicated, the following factual background is derived from Shubham's Petition for Writ of Habeas Corpus. Dkt. No. 1 ("Petition"). This Court is not, at this time, making a final determination as to the veracity of the facts stated therein.

2026, at 5 PM. Dkt. No. 5. On February 25, 2026, Respondents filed an Opposition. Dkt. No. 10 ("Opposition"). Shubham did not file a reply.

II. **Applicable Law**

A. **Preliminary Injunctions**

The analysis that courts must perform for temporary restraining orders and preliminary injunctions is "substantially identical." *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 (9th Cir. 2001). Federal Rule of Civil Procedure 65 sets forth the procedure for issuance of a preliminary injunction. *See* Fed. R. Civ. P. 65(b). "A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). To qualify for injunctive relief, Plaintiff must demonstrate: (1) a likelihood of success on the merits; (2) a likelihood that he will suffer irreparable harm without an injunction; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *Id.* at 20. This Court cannot grant the preliminary injunction "unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997).

The Ninth Circuit has held that injunctive relief may issue, even if the moving party cannot show a likelihood of success on the merits, if "'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). Under either formulation of the principles, preliminary injunctive relief should be denied if the probability of success on the merits is low. *See Martin v. Int'l Olympic Comm.*, 740 F.2d 670, 675 (9th Cir. 1984) ("[E]ven if the balance of hardships tips decidedly in favor of the moving party, it must be shown as an irreducible minimum that there is a fair chance of success on the merits.").

B. **Habeas Petitions in the Immigration Detention Context**

District courts are "generally prohibit[ed]" from "entering injunctions that order federal officials to take or to refrain from taking actions to enforce, implement, or otherwise carry out" certain provisions of the INA, found in 8 U.S.C. §§ 1221–1232. *Garland v. Aleman Gonzalez*, 596 U.S. 543, 550 (2022). But "lower courts retain the authority to 'enjoin or restrain the operation of

the relevant statutory provisions 'with respect to the Motion of such provisions to an individual [noncitizen] against whom proceedings under such part have been initiated.' *Id.* (quoting 8 U.S.C. § 1252(f)(1)).[2] This Court, therefore, may grant relief in "individual cases." *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 481-82 (1999).

Once an immigrant has been "released under an order of supervision," the following rules govern. 8 C.F.R. § 241.13(i)(1). To "revoke an [noncitizen]'s release under this section and return the [noncitizen] to custody," the Service must "determine[] that there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future." *Id.* § 241.13(i)(2). "Upon revocation, the [noncitizen] will be notified of the reasons for revocation of his or her release," and is entitled to an initial interview after the immigrant's return to custody to allow the immigrant to respond, submit evidence, or otherwise demonstrate that "there is no significant likelihood he or she be removed in the reasonably foreseeable future." *Id.* § 241(i)(3).

### III. Discussion

This Court first addresses Respondents' only argument in Opposition—that Shubham is not entitled to relief beyond a bond hearing[3]—before turning to the merits of the Motion. Opposition at 2.

#### A. *Maldonado Bautista* does not limit Shubham's potential relief.

In Opposition, Respondents' sole argument turns on the applicability of the final judgment entered in *Maldonado Bautista v. Santacruz*, No. 5:25-CV-01873-SSS-BFM, Dkt. No. 82 (C.D. Cal. Nov. 25, 2025). The Court in that case certified a "Bond Eligible Class" as follows:

> All noncitizens in the United States without lawful status who (1) have entered or will enter the United States without inspection; (2) were not or will not be apprehended

---

[2] Where it does not change the meaning, this Court will endeavor to use the term "noncitizen" in place of alien, consistent with the practice of the United States Supreme Court. *See Avilez v. Garland*, 69 F.4th 525, 527 (9th Cir. 2023) ("[U]se of the term noncitizen has become a common practice of the Supreme Court . . . . [In addition,] [t]he word alien can suggest 'strange,' 'different,' 'repugnant,' 'hostile,' and 'opposed,' *Alien, Webster's Third New International Dictionary* 53 (2002), while the word noncitizen, which is synonymous, *see Alien* and *Noncitizen, American Heritage Dictionary of English Language* 44, 1198 (5th ed. 2011), avoids such connotations. Thus, noncitizen seems the better choice.").

[3] The Opposition concedes that—per the entry of final judgment in *Maldonado Bautista*—Shubham is entitled to a timely bond hearing. Opposition at 2. To that end, this Court understands the TRO to be unopposed insofar as it asks for a bond hearing.

upon arrival; and (3) are not or will not be subject to detention under 8 U.S.C. § 1226(c), § 1226(b)(1), or § 1231 at the time the Department of Homeland Security makes an initial custody determination.

*Maldonado Bautista*, Dkt. No. 82 at *15; *see also Maldonado Bautista v. Santacruz*, No. 5:25-CV-01873-SSS-BFM, 2025 WL 3713982, (C.D. Cal. Dec. 18, 2025). The court, entering judgment in favor of Petitioners, found that "the Bond Eligible Class members are detained under 8 U.S.C. § 1226(a), are not subject to mandatory detention under § 1225(b)(2), and are entitled to consideration for release on bond by immigration officers and, if not released, a custody redetermination hearing before an immigration judge." *Maldonado Bautista v. Noem*, No. 5:25-CV-01873-SSS-BFM, 2025 WL 3678485, *1 (C.D. Cal. Dec. 18, 2025).

Respondents argue that, "[w]hile Petitioner seeks immediate release, to the extent Petitioner would be entitled to any remedy via the TRO application, at most it would be ordering a bond hearing to be held before an Immigration Judge under Section 1226(a)." Opposition at 2.

As an initial matter, neither party cites any authority for the proposition that membership in a class might impact other forms of relief that a party may seek individually. The Opposition references no cases beyond *Maldonado Bautista*. *See generally id.* But that case's order on final judgment and class certification do not appear to suggest that all members of the Bond Eligible Class are *only* entitled to the relief granted at final judgment. Nor is it clear that Shubham has received notice that he is a member of the Bond Eligible Class, such that he could opt out of whatever binding effects that judgment could have on him. *See* 7AA Wright & Miller's Federal Practice & Procedure § 1789.1 (3d ed.) (noting that "the Constitution requires a right to opt out, as well as receipt of notice of the suit"); *see also Silber v. Mabon*, 18 F.3d 1449, 1451 n.2 (9th Cir. 1994) ("Pursuant to Rule 23(c)(2), an absent class member must be given notice of his right to opt out of the class and to pursue his claim individually."). And it is not clear based off Shubham's Motion and the lack of a Reply if he is also arguing that he is detained under Section 1226(a) and is requesting a bond hearing. *See* Motion at 12-16, 19, 22. To that end, because Respondents do not support their argument that judgment in *Maldonado Bautista* limits Shubham's ability to seek relief beyond a bond hearing, this Court will consider the merits of Shubham's request.

**B. Applying the *Winter* factors, Shubham is entitled to a temporary restraining order.**

As discussed above, the standard for granting a temporary restraining order and a preliminary injunction are substantively identical. Given the urgency of this matter, this Court has only considered whether Petitioner is entitled to a temporary restraining order. Having determined below that he is entitled to a temporary restraining order, the Court will issue an order to show cause as to why a preliminary injunction should issue, which should permit further development of the record and additional briefing.

Petitioner argues two grounds upon which a temporary restraining order should be granted. First, Petitioner argues that he has been unlawfully detained in violation of substantive due process because there is no basis to deem he is a flight risk or a danger to the community. *See* Motion at 12-15. Second, he argues that he was unlawfully detained in violation of Fifth Amendment procedural due process because he was detained without pre-deprivation notice and an opportunity to be heard. *See id.* at 15-20. The Court applies the *Winter* factors to Shubham's claims below.

      i. The first *Winter* factor, likelihood of success on the merits, is met.

Shubham argues that he is entitled to a release order because the Government violated procedural due process by re-detaining him without notice and an opportunity to be heard. *Id.* For the reasons below, he is likely to succeed on the merits of his Fifth Amendment claim, so the Court need not evaluate the likelihood of success on Shubham's substantive due process claim for the purposes of the instant Motion. Accordingly, the first *Winter* factor is met.

The Motion argues that "ICE re-detained Petitioner without notice, without a hearing, and without any individualized determination of danger or flight risk, despite his lengthy compliance and strong equities." Motion at 8, 19. Importantly, Respondents do not meaningfully dispute that Petitioner has the right to notice and the opportunity to be heard on his re-detention, consistent with the applicable regulations. *See generally* Opposition.

"'The Fifth Amendment entitles [noncitizens] to due process of law' in the context of removal proceedings." *Trump v. J.G.G.*, 604 U.S. 670, 672 (2025) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)). Accordingly, immigration detainees pending removal are "entitled to notice and

opportunity to be heard 'appropriate to the nature of the case.'" *Id.* (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).[4]

Due process claims have two elements: (1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections. *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982 (9th Cir. 1998). Shubham is likely to succeed in demonstrating that both elements exist here. As to the first element, "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). This Court finds, and Respondents do not contest, that Shubham will likely prevail in demonstrating that his interest in remaining out of custody was a protected liberty interest under the Fifth Amendment. *See* Motion at 16-17. So, too, for the second element: Shubham is likely to prevail in establishing that detention absent any form of notice or a hearing effectively deprived him of his procedural due process rights. "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). And Shubham alleges he was given no opportunity to be heard at all. *See* Motion at 19-20; *see also* Petition ¶¶ 8, 13, 53-54. Respondents' Opposition does not dispute Shubham's factual account or attempt to justify the lack of process given to Shubham. To that end, he will likely prevail on the second factor.

---

[4] In light of *J.G.G.*, it appears that the applicable laws, namely 8 C.F.R. § 241.13(i)(3) and 8 C.F.R. § 241.4(*l*)(1), are the means by which ICE has determined it will meet the due process rights of putative detainees. Under the former, an immigrant who has been released under an order of supervision "will be notified of the reasons for revocation of his or her release." 8 C.F.R. § 241.13(i)(3). Promptly after the immigrant's return to custody, "the Service will conduct an initial informal interview . . . to afford the [noncitizen] an opportunity to respond to the reasons for revocation stated in the notification." *Id.* At that interview, the noncitizen "may submit any evidence or information that he or she believes shows there is no significant likelihood he or she be removed in the reasonably foreseeable future, or that he or she has not violated the order of supervision." *Id.* "The revocation custody review will include an evaluation of any contested facts relevant to the revocation and a determination whether the facts as determined warrant revocation and further denial of release." *Id.* Similarly, under Section 241.4(*l*)(1), noncitizens are entitled to "prompt[]" notification "of the reasons for revocation of his or her release or parole." 8 C.F.R. § 241.4(*l*)(i).

In addition, the Court notes that these regulations may inform how the Respondents can comply with this order, should they attempt to re-detain Shubham in accordance with his constitutional protections.

7

This Court's conclusion is consistent with other recent district court rulings. *See, e.g.*, *Kiwana v. LaRose*, No. 3:25-CV-3678-JES-SBC, 2026 WL 102661, at *2 (S.D. Cal. Jan. 14, 2026); *Bedrosian v. Noem*, No. 5:25-CV-02814-KES, 2026 WL 127800, at *6 (C.D. Cal. Jan. 15, 2026). Particularly instructive is the approach in *McSweeney v. Warden of the Otay Mesa Det. Facil.*, No. 3:25-CV-02488-RBM-DEB, 2025 WL 2998376 (S.D. Cal. Oct. 24, 2025). There, the court found that a detention which did not properly notify the petitioner of the reasons for revocation of release, or grant him an interview to allow him to respond to the reasons for revocation, violated the petitioner's due process rights. *Id.* at *5–7. Because there was no interview opportunity following the notice, the court found that the procedural deficiencies rose to the level of procedural due process violations. *Id.* In its words, "Petitioner could not have meaningfully responded to the proffered reasons for revocation when he had not yet even been informed of those reasons." *Id.*

To that end, Shubham has shown a likelihood of success on his procedural due process claim.

> ii. The second *Winter* factor, a demonstrated likelihood of irreparable harm absent an injunction, is met.

To establish the second *Winter* requirement, Shubham must demonstrate a likelihood that he will suffer irreparable harm without a temporary restraining order. Respondents do not address this factor, nor do they argue that Shubham has failed to make the requisite showing. This Court finds that the second *Winter* requirement is met.

As a threshold matter, Shubham has "established a likelihood of irreparable harm by virtue of the fact that [he is] likely to be unconstitutionally detained for an indeterminate period of time." *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017). The Government's discretion to issue removal orders is not at issue here. Instead, Shubham argues that the Government has not complied with the legal process that is due to him as a detained noncitizen. And "it is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). Moreover, Shubham's ongoing detention of indeterminate length inherently risks him irreparable harm, as it is not clear when he will be processed, released, or removed. Thus, as this Court has already found that Shubham has a sufficient likelihood of success on the merits of his challenges to

his current detention—in part based upon Shubham's constitutional rights—this Court finds the second *Winter* factor is met.

        iii.  <u>The third and fourth *Winter* factors, balancing the equities and considering the public interest, are met.</u>

When, as here, the nonmoving party is a governmental entity, the last two *Winter* factors "merge." *Nken v. Holder*, 556 U.S. 418, 435 (2009). This Court thus considers the third and fourth factors—whether the "balance of equities" is in Shubham's favor and whether an injunction is in the public interest—jointly. *All. for the Wild Rockies*, 632 F.3d at 1135.

The balance of equities appears to tilt in Shubham's favor. It is true that the Government has a strong interest in the enforcement of federal immigration law. But the Government "cannot reasonably assert that it is harmed in any legally cognizable sense" by being compelled to follow the law. *Zepeda v. I.N.S.*, 753 F.2d 719, 727 (9th Cir. 1983). To that end, "[a]ny additional administrative costs to the government are far outweighed by the considerable harm to plaintiffs' constitutional rights in the absence of the injunction." *Hernandez*, 872 F.3d at 996. "Faced with such a conflict between [the minimal cost to implement additional due process safeguards] and preventable human suffering," this Court finds ample reason to conclude that "the balance of hardships tips decidedly in plaintiffs' favor." *Lopez v. Heckler*, 713 F.2d 1432, 1437 (9th Cir. 1983). This is particularly true given that Respondents do not argue otherwise, nor do they allege that the issuance of a TRO in this matter would cause them harm at all. And, for related reasons, an injunction is in the public interest. "Public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution." *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005). Respondents do not contend that this Court should find otherwise. In sum, the third and fourth *Winter* factors are met here.

    **C.  A release order is the appropriate relief.**

Respondents' argument in support of *Maldonado Bautista* limiting Petitioner's relief suggests that a full grant of the TRO—including ordering Shubham's immediate release—is not an appropriate form of relief for this Court to grant. *See* Opposition at 2. This Court has already addressed why it may consider relief beyond the grant of a bond hearing. *See* Section III.A *supra*. For the reasons below, it determines that Shubham is entitled to a release order.

First, Shubham's prompt release is the remedy that will best return Shubham to the status quo and restore his position as it was prior to the detention that Shubham contends was in violation of his constitutional and statutory protections. The purpose of a temporary restraining order is "to preserve the status quo until there is an opportunity to hold a hearing on the application for a preliminary injunction." 11A Wright & Miller's Federal Practice & Procedure § 2951 (3d ed.). Though the Ninth Circuit has not opined on the matter of scope of preliminary relief in this specific context, other courts in this Circuit have taken a similar approach. *See, e.g.*, *F.M.V. v. Wofford*, No. 1:25-CV-01381, 2025 WL 3083934, at *7 (E.D. Cal. Nov. 4, 2025).

Second, in any event, this Court permits the Government to remedy the procedural deficiency at issue through its Orders issued *infra*. This Court's resolution of this Motion—to order Respondents to release Shubham from custody and not re-detain him absent compliance with due process and his legal protections—in effect permits the Government to follow the appropriate steps to reattempt Shubham's detention.

### D. No bond shall be required.

The security bond requirement of Federal Rule of Civil Procedure 65(c) is waived. The Court has "discretion as to the amount of security required, if any," and it "may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003). The parties do not dispute that bond is necessary in this instance. *See* Motion at 21; Opposition at 2.

### IV. Conclusion

For the foregoing reasons, the Motion is GRANTED.

1. Respondents are ORDERED to release Shubham from custody (and return to him his personal belongings) within forty-eight (48) hours,[5] and they may not re-detain him without compliance with 8 C.F.R. § 241.4(*l*)(1), 8 C.F.R. § 241.13(i), and 8 U.S.C. § 1231;

---

[5] This Court understands, based on Respondents' representations from hearings in similar immigration habeas cases, that Respondents believe that forty-eight hours is a reasonable amount of time to effectuate release.

2. Respondents are enjoined from relocating Shubham outside of the Central District of California pending final resolution of this matter;
3. Respondents shall not impose any release restrictions on Shubham, such as electronic monitoring, unless deemed necessary at a future pre-deprivation bond hearing.[6]
4. This Court orders Respondents to show cause, in writing, as to why a preliminary injunction should not issue.
    a. Respondents' brief is due on March 5, 2026, at 5 PM. Petitioner may file a response brief by March 10, 2026, at 5 PM.
    b. The parties may stipulate to a different briefing schedule via joint stipulation filed by March 3, 2026, at 5 PM. Should the parties wish to extend either briefing deadline, the parties should also stipulate that this temporary restraining order may remain in effect (without converting to a preliminary injunction) through this Court's decision on the preliminary injunction.
    c. The parties' briefing on the preliminary injunction should address whether the granting of this TRO renders the PI request, and the habeas petition itself, moot.

---

[6] Restraints not shared by members of the public renders an individual in custody within the meaning of 28 U.S.C. § 2241. *See Hensley v. Municipal Court, San Jose Milpitas Judicial Dist., Santa Clara County, California*, 411 U.S. 345, 351 (1973) (holding that a person is in custody if the person "is subject to restraints 'not shared by the public generally'" and the person's "freedom of movement rests in the hands of state judicial officers"); *Jones v. Cunningham*, 371 U.S. 236, 238-39 (1963) (finding that the "chief use of habeas corpus has been to seek the release of persons held in actual, physical custody in prison or jail. Yet English courts have long recognized the writ as a proper remedy even though the restraint is something less than close physical confinement"). As such, prospective release restrictions, such as electronic monitoring, constitute liberty constraints that do not afford petitioners complete relief.

5. The parties shall meet and confer and file a joint status report regarding Respondents' compliance with this Order by Tuesday, March 3, 2026, at 5 PM.

IT IS SO ORDERED.

Dated: February 27, 2026

———————————————————
MAAME EWUSI-MENSAH FRIMPONG
United States District Judge